All rise. The Illinois Public Prosecution Division is now in session. The Honorable Justice of the U.S. Enrollment is decided. Be seated. Call the first case, please. Case number 16-13-76, Andre and the Appointment of the Special Prosecutor. Appellants, how many people are going to argue in this case? Are you one? Hello? How many people intend to argue for the appellant? Have you decided, divided your time? Yes. How has it been divided? Yes. First, I need to speak to you about the city of Chicago, where one of the appellants. So the parties made an effort to agree on the sequence and the allocation. And the agreement is that the city will go first as appellant in both appeals. How much time? Twelve minutes. Uh-huh. Then Better Government Association will go as an appellant in its appeal and as an appellee. For how much time? For 15 minutes. And we're not going to give a half hour for this, but go ahead. What's your answer? The Office of Special Prosecutor as appellee in eight minutes. Uh-huh. And then the city and BGA would like a rebuttal to reserve time out of the agreed total. All right. We'll give the city and the BGA each ten minutes to argue. The Special Prosecutor will get 15 minutes to respond. And the city and the BGA can split the rebuttal time if you choose. We'll give you ten minutes of rebuttal. Okay? Okay. You can begin when you're ready. By the way, I don't use the timing lights, but I'll hold you to your time. So kind of watch the clock. Okay. Good morning, Your Honors, and may it please the Court. I will read the appeal on behalf of the city. While presiding over the grand jury proceedings in the Cauchman matter, Judge Truman in the criminal division added two protective orders rooted in the statutory provisions of the Grand Jury Act, which barred recipients of grand jury materials, including the city, from further disseminating those materials. In 2015, the Better Government Association served four requests on three city departments, the mayor's office, the law department, and the Chicago Police Department, requesting the city to release copies of grand jury subpoenas and all e-mail and other communications with the Office of the Special Prosecutor in the Cauchman matter, the materials that are plainly prohibited from disclosure by the terms of Judge Truman's orders. The city denied BGA's FOIA requests in reliance on Judge Truman's protective orders, pursuant to Section 7-1A of FOIA that exempts from disclosure information specifically prohibited from disclosure by state law. The BGA instituted a separate FOIA action in the Chancellor Division of the Cook County Circuit Court before Judge Mikva, challenging the city's denial. Your Honors, this morning I will explain why Judge Mikva erred as a matter of law when she erred pursuant to FOIA information at the release of the materials that are plainly and unquestionably subject to the terms of Judge Truman's protective orders. Is it safe to say that your error is based on the fact that the statute specifically says you cannot be ordered to turn over FOIA materials unless you have improperly withheld it and you withheld pursuant to a court order, which is not improper according to the United States Supreme Court? Is that your argument? The terms improperly withheld, that's in the federal FOIA, at least in this case. I think it's in the state, the term improperly may be in the state FOIA as well, but we have a lot of case law in Illinois that tells us, don't we, that when interpreting the Illinois FOIA we follow, or we at least listen to, we're not bound to follow it, case law interpreting the federal FOIA. Yes, it's accurate, Your Honor. I want to try and crystallize this point. The state statute does say improperly withheld, and so is it your argument that because you withheld pursuant to a court order that you did not improperly withhold? Our argument, Your Honor, is that we properly withheld because Judge Stewart's protective orders that are rooted in the statutory provisions of the Grand Jury Act and that give effect to the secrecy provisions of the Grand Jury Act constitute state law for purposes of Section 718 exemption in FOIA. So, Counsel, is that a yes or no answer to Justice Hoffman's question? I apologize, but to my understanding, the Illinois Freedom of Information Act may not employ the term improperly withheld, similar to the Federal Freedom of Information Act, and while the policy reasons why the Supreme Court in G.C. Sylvania held. So is it yes or no? That's all I'm asking. It is not exactly this argument, no, but we agree with the suggestion that the policy decision underlying the Supreme Court's decision in G.C. Sylvania, which I believe the Justice referred to, are the same and are reflected in our case as well. And we certainly relied on G.C. Sylvania, from which this language comes, that Justice Hoffman said that we certainly relied on it in our arguments below. Counsel, since you're relying on the fact that there's a court order from Judge Tumen prohibiting you from releasing these documents, how do you get around the argument your opponents have made that in order to avoid complying with the FOIA request, all a government has to do is sort of shop around, so to speak, and get a court order, because something that is very sensitive might be involved in litigation somewhere, someplace, and it might be easy to get a court order covering or prohibiting you from releasing? That is not what happened in this case. At the time that the FOIA request was served in this city, there was a pre-existing protective order that expressly prohibited the city to characterize or describe the materials that it has as those being produced to the grand jury investigation. So it's not a situation like in Carbondale where the FOIA request was served on September 6th and the court order prohibiting the release of documents was entered on September 19th, I believe. And in that particular case, the appellate court ruled, no, we're not going to allow public entities to shop around while facing the FOIA request that was filed to go in and look for the judge to enter protective order. This is not the situation here. The situation would have been potentially different if there was no pre-existing protective order specifically prohibiting the city from disclosing the materials. But the city was more than a rock than a hard place because Judge Truman's protective order, especially the second one specifically, prohibited us from disclosing these very materials that BJA requested. And in this state, litigants are required to obey existing orders by court, whether or not, even if potentially there are some disagreements with it. As a matter of orderly administration of justice, litigants should not be expected to disobey a pre-existing court order. I will take you now back to the question I asked you before, and I will read to you what the state FOIA provision provides. The circuit court shall have the jurisdiction to enjoin a public body from withholding public records and to order the production of any public records improperly withheld from the person seeking redress. Well, I apologize for the order. That certainly then goes directly with the argument in accordance with the federal FOIA as well, and the J.T. Sylvania, it all the more supports that language directly. So what's the answer, yes or no? Then the answer is yes. Then the answer is yes, Your Honors. And we certainly believe that Judge Nicola Earp is a matter of law in several respects. First of all, she disagreed with Judge Stoneman's construction of the secrecy provisions of the Grand Jury Act. And in doing so, she effectively set in review of the circuit order of a judge of corporate authority, which goes against the general principle in Illinois that one circuit judge may not review or disregard the orders of another circuit judge because it undermines respect for the law, judicial economy, and goes against the orderly administration of justice. Second of all, Judge Earp could believe that Blagojevich, that there was court decision on Blagojevich, was controlling here, but in Blagojevich, the Illinois Grand Jury Act was not an issue. Issue were federal grand jury's appearance, and as a result, federal rule of criminal procedure 6E2. Now, the Illinois Grand Jury Act differs from the federal rule in two important respects. First of all, it does not provide an exhaustive list of people or entities who are subject to nondisclosure obligations. And second of all, it's very important, it does not state that no obligation of secrecy may be imposed on any person except those listed in the rule. And consequently, nothing in the Illinois Grand Jury Act prohibited Judge Stoneman from entering protective orders imposing nondisclosure obligations on recipients of grand jury materials. And as a matter of even constitutional law, we do not want to be in a situation in which the legislature could accept Blagojevich's argument and interpret Illinois 4 in a way that they urge us to interpret, but the Illinois legislature, by statute, limits or even obliterates the judge's ability in the grand jury proceeding to control litigation in front of him and to issue protective orders, which in Illinois judges have inherent authority to enter protective orders. Because under Blagojevich's argument, no judge presiding over grand jury proceedings, no matter how sensitive the information is there, will be able to enter effective protective orders. And that is certainly a concern under the Constitution. Now, we want to also emphasize that Grand Jury Act in Illinois, while it provides for the secrecy of matters occurring before the grand jury, it does not define this term. So the only way to give teeth to the statutory protections, to effectuate the statutory protections, is by having judges giving them the ability to define what constitutes those matters in each particular proceeding. And certainly judges presiding over grand jury investigations, they're in a better position, they have a better knowledge of what needs to be sensitive and confidential in this proceeding. They need the ability to define what constitutes matters occurring before the grand jury, what needs to be kept secret in the proceeding over which they preside. And here is the other cases that the BJA says are distinguishable, because none of them include court orders come through the statutory provisions. So we respectfully ask this court to reverse the decision by Judge Mikva ordering the city to produce pursuant to four other materials expressly barred by the protective orders of Judge Toomey. And only in the case that this court disagrees with us and rejects our submission that Judge Mikva's four decisions should be reversed, well, in that situation, we would ask the court to be fair to the city and to reverse Judge Toomey's decision denying our request to modify his order only to the extent that we could comply with the four obligations without the fear of contempt. Because right now it is impossible, and the city is put in a position where it cannot comply with one order without violating the other. Okay, counsel, thank you. Thank you, Mr. Revolta. Counsel? Good morning. May it please the court. I'm Matt Topek. I represent the Better Government Association. And we're here in two capacities. We're the appellee in the city's argument that you just heard, but we're also the appellant in the argument in our suit against the Office of Special Prosecutors. So it's okay to start with responding to the city's arguments, and then I'll use some of the time to also talk about our separate arguments against OSP. It's Matt Topek. Let me start with the GTE Sylvania decision. As you noted, it does turn not on any exemptions. It turns on the phrase improperly withheld. So for decades, in Illinois FOIA case law, the law has been very clear, and it's supported by the remainder of the statute. It says unless a record is exempt, it has to be produced. So improperly withheld has to be produced. That's an interpretation of improper vis-a-vis a withholding under the Act. The United States Supreme Court was speaking of a case where the party didn't turn over in response to a court order. Now, you obviously can't have, in my opinion, a court ordering production of FOIA materials that will place the person who is supposed to produce the materials in contempt of another court. So I think that issue is a short-term issue, and it is a function of the fact that the appellate courts of the state have not yet resolved the fundamental question of whether court orders create FOIA exemptions, which essentially allows judges to create new exemptions that aren't in the statute. Once that issue has been settled, that is not an issue that will recur. Is it your client's position, then, Mr. Topic, that courts are utterly powerless to do things in the governance and administration of the cases before them that would somehow diminish someone else's FOIA rights, even for a short period of time? So the FOIA statute itself has plenty of exemptions. They could arguably apply in any instance. If release of the information would actually interfere with someone's FOIA trial rights, there's already an exemption that covers that. Now, could there be instances in which there's a separation of powers issue that arises? Maybe, but I don't see that happening here. And that's not an argument that anyone's really made. But let me make this real crystal clear. I'm inquiring about your position relative to a court ordering FOIA production when the party against whom that order is entered would be in contempt of a valid court order if they turned it over. So the situation here where Judge Mikva entered an order finding the cities required to produce, and Judge Tumman had separate from FOIA said that... Well, Judge Tumman had a prior order that the city was under. It was not vacated, and it was still a valid order at the time that Judge Tumman ordered these documents, or Judge Mikva ordered these documents turned over. So now the question is, has the city improperly withheld the documents when they did it in compliance with a valid court order? So the answer is, yes, they have improperly withheld the record because the FOIA statute does not allow the withholding of a record based on a court order. Let me read you a phrase. To construe the lawful obedience of an injunction issued by a federal district court with jurisdiction to enter such a decree as, quote, improperly withholding documents under the Freedom of Information Act would do violence to the common understanding of the term improperly and would extend the act well beyond the intent of Congress. That was the United States Supreme Court. On a fact situation, it is almost identical to this. So Illinois courts have interpreted the Illinois FOIA statute much more in favor of requesters than the federal courts have. And while generally we look to federal cases, we don't always, and this is an instance in which the federal U.S. Supreme Court in interpreting the federal act used a doctrine that's totally different from the way the Supreme Court of this state have interpreted it. So to answer your question about, which I think the fundamental issue is, well, what should the city do in this instance? So once it has been resolved that courts cannot create FOIA exemptions through their court orders, then any judge faced with this situation will have to acknowledge that he cannot say, and you can't produce this record even when there's a statutory obligation to do it. Well, wait a minute. At the time Judge Tuman entered his order, there was no FOIA request when the original order was entered. Well, the history is there were FOIA requests by the sometimes. The city went to Judge Tuman and asked Judge Tuman to clarify his order, to tell him not to produce it. But you just answered your own question because you said you could clarify his order. The order had been entered at the request of Dan Webb in the very early days of the special grand jury proceedings. What Judge Tuman says in his order is, quote, in the wake of the findings of the public access counselor, the city's motion reiterates its resistance to making the disclosure sought by Mr. Noda. Therefore, the city requests that this court conclusively state that the records the city produced pursuant to the grand jury subpoenas are covered by the protective order it cannot be produced. I'd paraphrase that. When the protective order was entered before the FOIA request was made, it was clarified by Judge Tuman after the signing. Twice. It was made a request. It was changed. The PAC made clear that the order did not apply to some of the things that had been at issue. And so the PAC left the city in a position to say either produce it or go back to Judge Tuman and get an order that says you can't produce this. And that's what they did is the quote. And who appealed Judge Tuman's order? The city appealed Judge Tuman's order here only after they were in the position that they were. And what we would say is that in this situation, the city should do the same thing the city should do if the city wanted to release the document. Go to Judge Tuman, explain its obligations under FOIA, and ask Judge Tuman to say you have to give me relief to comply with my statutory obligations. Or else we get into a situation where now the General Assembly no longer has the sole province of deciding what is exempt under FOIA or isn't exempt under FOIA. Well, the Congress of the United States didn't have any more control over what was or was not exempt when the United States Supreme Court found that if the documents are withheld, pursuant to a valid court order, they have not even properly been withheld, and therefore you're entitled to no relief under FOIA. I think you do more detail in the brief, but there are differences between the FOIA statute federally and state, and most importantly, there are a litany of cases that say in Illinois, unless a specific statutory exemption applies, the record has to be released. We understand that, and that's true on the federal side. Unless a specific exemption exists, you cannot claim exemption under the statute itself. But the United States Supreme Court went further and said the only time you're entitled to relief in a FOIA case is if the documents are improperly withheld, and when a party withholds pursuant to a valid court order, it is not improper. And so now you have the situation where no one is claiming, the city's not claiming that they're withholding under a section of FOIA. They're contending they're withholding because they're complying with a court order. They're saying that Section 7.1a of FOIA is the basis for their withholding. Is that a distinction with a difference, though? Whether they wave the flag of 7.1a in the air or simply say we have a court order, does that make a difference? It does. The burden is on them to prove their exemption claims. The burden is on them to cite the specific statutory exemptions. I'm taking your argument to its logical conclusion. Tell me why I'm wrong. Your argument is that no court can ever order a public agency to keep something confidential if it's otherwise released on to FOIA. Correct. That's your argument. And, but with the addendum to that, we already have in the FOIA statute exemptions that would cover any reasonable situation in which there would need to be any secrecy over documents in the first place. So if a judge doesn't get to determine whether the particular situation before him or her is reasonable, and if it doesn't fall under one of those listed in the FOIA statute you're saying that the judge has no power to order those documents withheld, is that your argument? Correct. If there's not a statutory exemption, then the courts do not have the authority to tell a public body it can't comply with its statutory obligations. Okay. Why don't you go to your other argument? Are you going to not be able to get to mine? Sure. So I just wanted to point out, actually, before I move on, the Janssen decision, which talks about ordinances versus state laws, and it really refutes a lot of the city's arguments about, well, the order is basically just the court interpreting the Grand Jury Act, which is not true. The city has never relied on the Grand Jury Act itself. It's relied on the court order, and that's an important distinction. So let me turn to the arguments against the Office of the Special Prosecutor. There are two main arguments. One is whether the records at issue here are matters occurring before the Grand Jury. The other issue is the interaction between FOIA and the Grand Jury Act and whether FOIA is a statute or a law that so directs that the records be released. Mr. Topek, the BJA appeared before Judge Toulmin in the context of the Grand Jury proceeding. In the very early stages, it was through Mr. Gagan, who was the attorney, basically urging Judge Toulmin to appoint a special prosecutor in the first instance. Did the BJA appear before Judge Toulmin in the Grand Jury proceedings after that? No. The only other filing in front of Judge Toulmin that I'm aware of, and I'm pretty confident there aren't any, was in response to the city's motion seeking relief from Judge Toulmin in which we said, yes, we agree that the order should be lifted. But we were not a litigant or a party to the Grand Jury proceedings, no. Okay. Doesn't that give you some problems with this appeal, with some of the arguments? In our appeal against the Special Prosecutor's Office? Yes. I don't see how it does. No, you're appealing under your FOIA request. Correct. Special Prosecutor's Office. Correct. I think you've raised some arguments specifically directed saying Judge Toulmin erred by refusing to modify his protective order. But we agree with the city that in the event that you conclude that the city was allowed to withhold the record based on Judge Toulmin's order, we agree with the city that the order should be vacated, that there is no purpose that's served anymore by the record being, by the records being held. Let me ask you a question. I'm trying to understand what your argument is here on the Grand Jury proceedings. See if you follow. Okay. According to you, Section 5112-6C3 of the Grand Jury Act provides that disclosure of otherwise prohibited material may be made when a law so directs. And it's your contention that Section 143A of FOIA states that each public body shall make available to any person for inspection all public records except as those exempted under 7. And because 7 exempts only information specifically prohibited from disclosure by federal or state law, and the Grand Jury Secrecy Act does not specifically prohibit disclosure, that FOIA trumps the Grand Jury Act, and you can go and ask for all Grand Jury materials that you want. Is that your argument? So there are two arguments, and they're completely separate, and neither one of them is enough for us to reveal. That is the second argument. What we're saying is that the inter- I don't know if this is your argument. That's largely correct. I don't understand this. FOIA trumps the Secrecy Act of the Grand Jury so that any time a news organization wants to know what's going on at the Grand Jury, they can serve a FOIA request and get the transcripts, get the witness names, and everything? Is that your argument? No, because there are other FOIA exemptions that will apply to those things that you've just described. So if it would interfere with the Grand Jury proceedings, which in many instances it would, there is already a FOIA exemption for that. If it would deprive someone of a fair trial, if it would disclose witness names. But you cited the fact that the secrecy provision of the Grand Jury Act is not only for the existing Grand Jury. It's for future Grand Juries so that witnesses will not be afraid to testify for a Grand Jury when some news organization decides they want to publicize what went on or goes on. And the federal cases are very specific on this and say the protection of future Grand Juries is just as important as the protection of the safety of this Grand Jury. And to your example of a witness who testifies in front of the Grand Jury, there would already be an exemption that arguably would apply. No, no, we're talking about if you get information from Grand Jury A, a person who's called to testify in front of Grand Jury B may be very, very slow to testify because they believe at some future date what they have to say or any statements they make may very well be disclosed. But what I'm saying is there are already, there are FOIA exemptions that cover that scenario. And so the interaction between, I mean, you have to give some effect to the language that's actually used in the statute. So there must be something meant when it says when another law so directs. FOIA is another law. FOIA says unless there's an exemption, it has to be released. I would interpret that to mean when another law so directs, meaning another law directs that Grand Jury material be disclosed. And there are many cases that say even when we're deriving an exemption from another statute, you have to narrowly construe it in a way in favor of public disclosure. And so you're correct. There could be an interpretation like that. But there's also a very reasonable interpretation that has a far more limited scope. And the FOIA case all makes very clear that the narrow interpretations are the ones that are correct. What's your primary argument on this issue? So the first argument that we would make is not the issue at a per se level. It's are these specific records matters occurring before the Grand Jury? So the question of what is a matter occurring before the Grand Jury, in the Verisario case there was a little bit of discussion about that. And in footnote one, we basically say that that was a factual matter that hadn't been addressed by the trial court, so they weren't going to address it. So if you look at the meaning of the word before, you look at the doctrine that says you narrowly construe the exemptions, you look at the purpose of the Grand Jury secrecy as is articulated in Verisario and elsewhere about the sanctity of what occurs in the Grand Jury room, there's a distinction. And in the case where it says the Grand Jury and the prosecutor are independent entities and the prosecutor doesn't have to present everything to the Grand Jury. And so the things that we have asked for, we think most of them, if not all of them, were never presented to the Grand Jury. And if they were presented to the Grand Jury, they're not matters occurring before the Grand Jury. Otherwise, you're saying any time a prosecutor calls a Grand Jury, then everything related to the investigation is exempt. And that can't be correct because we have a lease of prosecutorial records all the time. So... Justice Sotomayor, I agree this is pretty broad. But you're saying you don't agree with it so you're going to decide which items were matters presented to the Grand Jury. Is that – who makes that decision? You are the judge who entered the order. Well, so the special prosecutor does not rely on Judge Tieuman's order as a basis to withhold the records. They only rely on the Grand Jury Act. So it should have been handled the same as every other fray case. The judge should've required affidavits. The judge should have done an in-camera inspection and gone through the documents and said, it would be very easy for the special prosecutor to say, yes, this witness statement was presented to the Grand Jury. This one wasn't. The billing records. These are things where we quote or describe what happened in the Grand Jury room. Here are things where it didn't. So it was – the error below was that there was a very broad room when the fray case law and the meaning of the term matters occurring before the Grand Jury require that we really go carefully document by document. And if it were things that were never presented, then it's not a matter occurring before the Grand Jury. Mr. Topic, let me quote you Bob Hurgis FOIA requests. Okay. All right. Number one, any and all subpoenas issued to the Chicago Police Department, Law Department, Mayor's Office, in regards to the Van Neckl-Konchman investigation slash special prosecution. And I think that's a direct quote from Mr. Hurgis' email. How is that not a matter before the Grand Jury? That is the request to the city and not the request to the special prosecutor. Right. It is. Right. So any subpoenas? That isn't sufficient to show the names of everyone interviewed by Dan Webb's special prosecutors in relation to Konchman-Van Neckl. Right. How is that not matters that are before the Grand Jury? Because every person's name we know would reveal witnesses. Well, except that we know from the report that the special prosecutor released with 160 some pages of details about this investigation. So read the report. There are a number of people who were interviewed whose testimony or statements were never presented to the Grand Jury. Copies of any and all statements by and communications with daily family members of their attorneys and the same information from Mara Jordan. Highly unlikely any of that was presented to the Grand Jury itself. Why didn't you just ask for stuff that wasn't presented to the Grand Jury instead of any and all? Because FOIA requires a document-by-document analysis. So if there's some documents that were presented to the Grand Jury, then the analysis would go one way. But if there's other records that aren't, then those have to be produced. We always do this on a document-by-document basis. Well, if you made the request the way Justice Hoffman suggests, how would that prevent you from analyzing it document-by-document? Well, so if some documents are exempt and some aren't, then the decision is always made on a per-document basis. An index is done on a per-document basis. So it's the burden on the OSB side to prove the exemptions. So what we have to do is show we made a request and they denied it. Then they can come in and say these are matters occurring before the Grand Jury because these were actually presented to the Grand Jury. And over here are documents that they have no basis to say they were ever presented to the Grand Jury. Those would be ordered released. So we always end up doing this on a document-by-document basis. And it's possible that some of these are exempt if they were actually presented to the Grand Jury. We've never disputed that, but that doesn't make the remaining documents non-exempt. You have attractive arguments on that point as to the itemized invoices and billing records because if the billing record said I interviewed John Jones and John Jones was a witness, then that may arguably fall under the secrecy provision. But if it only says I interviewed a witness, then in that particular case you haven't got a real Grand Jury problem. So as to the copies of the itemized invoices and billing records, you may have an argument that that should have been handled in camera inspection and the court should have looked at it and redacted what was protected under secrecy and what wasn't. Mr. Hoppeck, let me. Sure. If you thought there was something to answer with Justice Hoffman's question, please proceed. Only to say that the same holds true if we're talking about a witness who was interviewed by a special prosecutor and never presented to the Grand Jury. The Grand Jury didn't even know that person existed. To disclose that doesn't disclose anything about the operations of the Grand Jury. It only discloses the operations of the prosecutor, and in Nelson the Supreme Court made clear prosecutors are subject to FOIA. So I think it highlights the point that even with the witnesses, we still have to go very carefully through the process. What's your best case on the whole concept of that FOIA is sufficiently robust to allow the release of Grand Jury records? Because this seems to be, and I hate to use the term case of first impression nationwide, but if the rule that you're advocating for was a rule, we have Grand Jury records being released all over the place and people who secretly were put in front of a Grand Jury to give the key information that resulted in the indictment of some dangerous person. Then whether it's a month later or a year later or ten years later, or whenever they get out of prison, then that witness is subject to harm or peril because their identity has now been revealed. How do we not go down that path with the rule you're advocating? Because there's an exemption already in FOIA for confidential informants. There's already one for witnesses who provide information to law enforcement. So we already have mechanisms in the FOIA statute itself that would adequately deal with this. Without creating a situation where if we say, let's pretend it's not even the Grand Jury, if we're talking about the court order issue. Let's pretend it has nothing to do with the Grand Jury. It could have to do with anything. If we open the door to saying individual judges can essentially make new FOIA exemptions, you have a situation that is described in the concurrence in Carbondale and where that potentially could lead to. Counsel, thank you. Thank you. Mr. Marbo. Good morning, and may it please the Court. I am Sean Weaver from Winston and Strawn on behalf of the Office of the Special Prosecutor. Your Honors, if you don't mind an honor allocation of the time, I'd first like to address the BJA's arguments and then reserve the floor to the Court. We have just a couple of minutes to address the very narrow position of the OSP vis-à-vis the City's alternative request of relief. Mr. Weaver, given the press of time, let me follow up to Justice Hoffman's question. Why aren't the bills subject to at least an in-camera review? Public agencies' legal bills are routinely disclosed under FOIA. You're basically the State's Attorney's Office for the purpose of this case. That's correct. The Illinois Supreme Court has held that the State's Attorney's Office is subject to FOIA. So there could be a number of entries in those billings, something like travel to 26 in California, research such-and-such case that wouldn't reveal a darn thing, but would be normally subject to FOIA if it wasn't a special prosecutor, but it was just Doe and Doe Law Firm. Right? So that means Judge Rufus sort of entered this point of order saying, absolutely no, they don't get any of the billing records. And I think she did so utilizing her discretion. Well, yeah, but discretion has to be exercised within certain bounds. Why couldn't she have looked at them in camera to determine what portions were discoverable under FOIA and which ones weren't? Right. And I think the answer to that, Your Honor, is the fact that the OSP, by definition, was special, okay? We were not the Cook County State's Attorney's Office. We were a single-purpose entity that was created. That's a given, but does that make a difference for FOIA purposes? Well, I think it should. Because under the county's code, your office, having been appointed as special State's Attorney, stands in the place and stead of the elected State's Attorney, who was Ms. Alvarez at the time. Correct. So it goes through the contents of what would be contained in those detailed billing invoices. And it's a little bit ironic, although it's something to point out, is that the only reason those records exist is because we were a private law firm, right? The State's Attorney doesn't keep the sort of records of every six minutes of my life on a case. You're claiming an exemption for those bills from FOIA because, I think, it falls under the secrecy provision of the grand jury because it can disclose information. Absolutely. But there's a question when you're talking about the billings. The billings doesn't fall under the generic title of disclosing the prosecutor's theories, or revealing the names of witnesses. It may or it may not. And I suppose the question is, why shouldn't it have been looked at in camera? And I guess the answer is Judge Lipa didn't answer that, okay? But I think she was somewhat comforted by the following fact. Their request really encompasses two different types of billing records. One, what I'll call the detailed Winston-Strahm-style billing records that we would do for all our clients. The second was a summary fashion billing records that would give, in summary, okay, hours, attorneys working on the matter. Those are actually public. And so to the extent the BJA was concerned about fraud or waste or allocation of time, who was involved at what rates, that material is already public. It was provided to the Cook County Board of Commissioners. The BJA and Mr. Topic have access to it. The real sort of rub here, I think, in Judge Lipa's mind is for a Senate purpose entity like the OSP, whose creation was only in conjunction with carrying out the mandate that Judge Tuman had in performance of our oversight of the grand jury investigation, every one of those records goes to something that's discussed in Bar Asario, those time entries. The direction, the strategy, the questions of the grand jurors, witnesses, and there's also this catch-all in Bar Asario, which is, and the like. It's very broad. And having been involved in written time entries on this case, it is very detailed. I'm not sure there is a way to sort of splice between the idea of trawling the 26 in California as opposed to researching on witness, or to say witness X, as it relates to immunity issues to be brought before the court, for example. All right. Help me understand something you just said. There's two different written documents. One is more detailed, and you believe that's the one that's covered by the FOIA request that was denied. Correct. And there was a second document that was, was it redacted from the first? Or what's the difference between the first and the second? The second being the one that was sent to the Cook County Board. Correct. So the first exists because we as private lawyers had to be paid by Winston and Strunk, okay? So I couldn't just, I couldn't just submit to, I just couldn't submit to say, I worked eight hours on the special prosecution matter, therefore on my allotted time as an associate or partner at the law firm, I've met my hours, okay? So the firm, it doesn't come, when you get appointed as a special prosecutor, right, it doesn't come with a guidebook. Judge Truman's order and the county's code both provide that a special state's attorney is not to be paid more than the annual salary of the elected state's attorney. So did Winston and Strunk just send a bill to the Cook County Board that said, you know, we did tons and tons of work and they'll give us $180,000? No, no, no, not at all. Which is the salary of the state's attorney? So on your, so on the other's first question, that's why there were detailed time entry either in six-minute or quarter-hour increments, because they exist for purposes of maintaining employment as a lawyer at Winston. The other purpose of what I'll call the summary fashion, who was working on the matter at what rate for how many hours, and then also line itemed on disbursements, because we were entitled according to the order. Out-of-pocket costs. Out-of-pocket costs, and also a negotiated rate of, I think Dan Webb's rate was $200 or $225 an hour, and he was the highest. It was, and it was approved by the court. Those records were done in summary fashion, so there is an accounting that was done, and they were submitted to Judge Tooman, who then reviewed for reasonableness and submitted them. Nobody in this room suffers from any delusion that the BGA wanted these records to find out if you overbilled. Now, come on. They wanted the records to find out what was going on in the investigation. That's why they wanted them. And the very reason why they are exempt. Well, they are exempt if they disclose what went on in the investigation. They asked for copies of any and all itemized invoices and billing records for the special prosecutor's team. Now, you claim exemption under the secrecy provision, and that's because the secrecy provision specifically is directed against the state's attorney. So you're in the shoes of the state's attorney. Understood. So now, if what's in those billing records, or a portion of those billing records, do not disclose anything about who the witnesses were of the grand jury, what direction your investigation was going in, what statements you may have taken from witnesses on the issues before the grand jury, if they only disclose that you went to 26th Street, or you went to wherever you went, and it doesn't say what you researched, then I suppose my question is, why isn't it discoverable under FOIA? Why aren't they entitled to it? And I think the answer is that... They should have it already? I think, I just think, well, first of all, one is, in reality, if they were concerned about fraud and waste, if you looked at the original sort of theory behind the BJA, that's what they were created for. So that issue is sort of off the table. Mr. Topekin, in the brief, has said, we're not at all interested of what occurred before the grand jury. We want to know what happened, what the OSP's office did. Our point, and I think what Judge Mikva embraced, was, listen, they exist only because they were overseeing the grand jury. Those records, by their very nature, are going to disclose what Varsario, the only appellate court in the state that we have that's interpreted what is a matter occurring before the grand jury, as she said, categorically. I can look at those. I don't need to go line by line. Categorically, billed statements, detailed billing records are going to reveal the substance, the strategy, and the direction of the grand jurors. I don't need to do an in-camera review. You submit that they're detailed and that they contain this information, and she was comfortable saying that that is, under Varsario, those are exempt. That's why we claimed them as exempt. Thinking beyond that, if it's not in her opinion, I don't know that I would suggest that Judge Mikva thought hard about the issue and made a determination that they were exempt, and I think this court should allow her her discretion, which she has on her forehead. She had a discretion to do an in-camera review. She did a very reasoned, and I think it's the same analysis that the Taliani case did, when FACE was, hey, are these materials grand jury material? I don't need to do a bunch of statutory machinations. I'll look at the grand jury statute. I'll look at the interpretation under controlling law. It's very broad. I'll make a determination that these are grand jury materials, and I'm going to hold them as exempt. Why? Because they're looking to find out what occurred before the grand jury, and I'm just suggesting that the distinction between what was occurring in our office and what was occurring before the grand jury is a distinction that does not exist. Our whole purpose was overseeing the grand jury. There are no time entries on any other matters. As it relates to the – with my – a lot of time I would like to address, if I could, Your Honors, the idea of the narrowness that the BGA asserts should be surrounded with what constitutes grand jury material. And this may be the first time that I've ever been able to make arguments in the case where I actually have lived the case, because I have been a deputy special prosecutor since April of 2012, and during – and including over the entirety of overseeing the 17-month grand jury investigation. And I think the practical realities of the BGA's position are very important and sort of go beyond sort of theoretically what would happen. And here's, for example, the grand jury, which weren't held in our offices on the 47th floor in a conference room, and the BGA asserts that this court should adopt a very sort of narrow, what occurred before the grand jury, and almost a physical sense of looking at this courtroom and what's occurring before this courtroom, sort of a four walls argument. And it probably comes as no surprise that the grand jurors, while they were impaneled for 17 months, didn't sit in our offices for seven days a week and 24 hours a day. They would meet once or twice a week, and they are a layperson, and they're entitled to counsel, and we serve as their lawyers. They were mandated to investigate the same things that our office was. Judge Tubman impaneled, Judge Tubman read them the mandate, and they were hardworking folks. And they would come up with things such as, what witnesses are you going to speak to, what documents should we be getting, other immunity issues. They were involved. They were providing direction and strategy. We carried that out, of course. I'm not suggesting that we as lawyers didn't come up with ideas and work with them. But outside the confines of what was occurring in the four corners of the room, I would then go down literally on the 46th floor where my office was and then begin to implement those through e-mails. BJA is asking for all correspondence between the OSP and witnesses' lawyers. And I'll tell you that they do contain e-mails back and forth as it relates to, well, the grand jury is interested in A, B, and C. Can you answer that, please? And we're working with their lawyers, and they're crafting witness statements. I mean, that should come as no surprise. And the witness statements come over e-mail. Okay? And sometimes they are read directly into the record. The witness will appear, will be sworn, and will read those into the record. Other times our investigators would read them into the record. But the idea that the BJA should somehow implore this court to confine what matters occurring before the grand jury to this concept of physically in the room just doesn't make sense. And I hope that practical example of receiving a statement via e-mail, that makes it no less of a grand jury material, certainly under any precedent I've seen. And, Your Honor, I think you're right. I do believe this would be, if your court, if this court were to adopt the BJA's arguments as it relates to the narrow interpretation, not only, it is certainly a case of first impression in Illinois. I think Your Honor is right. I have not been able to find anything anywhere, federal, state, across the country. And I think if it existed, you would have heard the BJA bring it. And they haven't. And I think that's for a reason. I think it is sort of a deference that goes through. R.S. Sario says that the matters occurring before the grand jury are matters such as the identity of witnesses, jurors, the substance of their testimony, the direction of the investigation, deliberations or questions of the juror, and the like. Yes. And anything, according to R.S. Sario, which is the only case in Illinois, But the federal cases are, there's a whole line of federal cases about this. And each one of them says the same thing because, quite frankly, R.S. Sario in making that determination was merely quoting a case from the D.C. Circuit, which was the first one to say it. And it was a case called Security Exchange versus Dresser Industries. Yes, Your Honor. Which is the one that came up with that phrase that R.S. Sario adopted. And the majority of the other cases also identify the matters occurring before the grand jury in a similar fashion. But the question that arises always in these cases is, what happens when the grand jury is discharged? Now we don't have any more worries about the disclosure, the information, disclosure in the direction of an investigation because the investigation has ended. So now what is the argument for preserving these documents under the secrecy of the grand jury after the grand jury has been discharged? And, by the way, the individual has been indicted and pled guilty. Right. And the statute of limitations has expired on pretty much everything that could happen out of the incident. I think Your Honor is correct on that. Our office has already made a determination that there are no more charges forthcoming. So to answer your question, I think it permeates from two perspectives. One is what I'll call our obligation as the Office of Special Prosecution to uphold the Grand Jury Act secrecy provision. It's important to note that the secrecy provisions of the Grand Jury Act have no expiration date. So from our perspective, the obligation, and that's why we're here, we could have just conceded and just moved on, but we didn't because we took seriously, and Danuel did as well, the obligation, because we did stand in the shoes, the obligation falls on the state's attorney not just to preserve it during dependency of a criminal trial or during dependency of the investigation. That obligation exists in perpetuity. Now, that's not to suggest that a prosecutor's office doesn't have an ability to release materials, but it has to do so under the rubric that's provided by the statute. Okay? So in a 1983 case, and that's what the language of the statute talks about, in connection with or preliminary to or in connection with another matter, if you were to bring a case, then there are the interests of justice standards. So material can be released. So I think, Your Honor, to address your point, it's not vis-a-vis FOIA that that interest should be played out. I think the case law is clear on that. But if there was a need for these records, there is due process and a mechanism in the grand jury statute that allows folks to get to that information. Yeah, the federal cases are quite clear. If the document is being sought because of itself, as opposed to determine a matter that happened in the grand jury, it may very well be released. Right. And I think what probably, and I think the frustration that Judge Truman has felt that we've heard an argument that we can read in his papers, is the fact that the BJA has an ability to get to certain records. It has chosen to embrace the idea of take a hit on it. I want everything given to the special prosecution in conjunction with the grand jury. It has a road map of things that are laid out. It has specific records. Records have an independent, intrinsic value. They're entitled to those, for example, from the city. It's chosen in how it's phrased its FOIA requests to take a hit on, as put Judge Truman in a position, and he's even said this in open court, if you were to, he's implored them actually now twice, if you were to phrase your request differently, take for example an ANA sheet for a Chicago police officer. What sheet? An ANA sheet, an administrative attendance sheet. Underlying police records in the Koshner case. If you're interested in those. If you actually intend, I used to write them, it's attendance and assignment. I stand corrected. Other CPD records that existed in the normal course, years before the special prosecutor was ever appointed, they could ask for those things specifically, and the process would play out. The city would receive that request. Does the record exist? Do exemptions apply? If not, produce those. And that's exactly what Judge Truman has said. And this just shows them how to, frankly, well, directionality is irrelevant, but they had an ability if they wanted to get to certain records, and to sort of take a hit on has sort of led to this. And I think Judge Mitchell got it right, and I guess I'll just segue just a few comments on Judge Truman's discretion. When he entered the protective order, and frankly I think when his refusal to modify the protective order based on the arguments that the city has provided, the BJA didn't really participate in that hearing. It could have. Judge Mitchell had asked it to. He decided not to. The city carried the burden, and the city put forth, listen, here's what's happened since we were last before your honor, and we're asking you to modify this protective order. It's critical just to know, because we haven't heard it today, the standard of review for Judge Truman's refusal to modify the protective orders is an abuse of discretion. So it does not matter whether or not the panel individually or collectively think he got it wrong. The standard is whether or not a reasonable jurist, okay, there's no reasonable jurist that could have cited the way that he did it. And he's made it tough, okay. He does give a 21-page reasoned opinion walking through in detail, here are the arguments, and here's why I don't think the changes in circumstances matter. And at this point in time, I refuse to modify based on the evidence that has been presented to me. It's not foreclosed, though. I mean, he's not an irrational person. He does leave open the possibility that things could change. And lo and behold, the BJA, there are other ways to go about it. I mean, if secrecy had an expiration date, the legislature could deal with that. I understand that there's been media over this case that, as your honor has pointed out, it was actually the BJA and other lawyers that implored Judge Truman to do a very sort of brave thing, right, which was to appoint a special prosecutor to review Cook County State's Attorney's Office and the CPD. And he did that to sort of get to justice. And the hope would be that if there ever came a point in time for a high-profile matter that the public was interested in, that the investigative journalists are interested in, that's all very good. We don't stand up here to say FOIA doesn't serve a purpose. But the legislature could deal with that. I want to, because you're out of time, the BJA's second position in their interpretation, the interplay between these two statutes, between the secrecy provision, is it your position that if that interpretation were adopted, then the FOIA would eviscerate the exceptions of the secrecy provision of the Grand Jury Act? Yeah, and your honor's use of the word eviscerate is well taken. I mean, that's actually a phrase that I used before Judge Mixon at the trial court level. I really do think that even when your honor talked about trumping it, I actually think that's what it is. I mean, I think the BJA's position, I credit it for creating some unique arguments as it relates to this, but most folks have kept it very simple, which is Grand Jury Act is a statute. BJA concedes that that statute, for purposes of FOIA, is a state law. We look at the matter. Is it Grand Jury material? If it is, it's exempt. Analysis stops there. Their interpretation leaves, I don't know what remains if this court were to adopt the BJA's interpretation. I don't know what remains of the Grand Jury statute, that is. I was searching for what remained. And your honor, I thought about that since the FOIA request came in in 2015, and I still don't have an answer because I think the answer is that nothing remains. In reality, nothing remains. And that's what's problematic and why this court should uphold Judge Mixon's determination. And if it gets to the alternative relief that the city seeks, it should also affirm Judge Toomin's decision to not modify the protective orders at this time. Okay. Thank you. We'll give the people some rebuttal. One point. BJA's counsel referred to the appellate decision, recent decision, in the City of Chicago v. Jensen Pharmaceuticals case, but that case actually supports the city's position in this appeal, not BJA's. We rely on the Exemption 7-1A in FOIA, which exempts material that is specifically prohibited from disclosure by state law. And the court in Jensen stated, state and statutory are not equivalent, which basically means state law does not equate statutory law. It is something broader than just a statute. And here, the material was exempt because of Judge Toomin's order that gave effect to the statutory protections of the grand jury app. Well, that's under your theory that Judge Toomin's order was a state law. Yes. I don't find any support for that anywhere in any case. The court order becomes a state law. Now, you can make the argument that if one adopts the BJA's position, then the FOIA eviscerates the Grand Secrecy Act because their theory, I guess, is Section 7-1A of the FOIA only exempts information specifically prohibited from disclosure by state law, and the Grand Jury Secrecy Act does not specifically prohibit disclosure of matters occurring that makes the disclosure discretionary when a state law so provides. So they're saying it's not prohibited under the Grand Jury Act. It's discretionary. And therefore, it doesn't fall under 7-1A. I mean, you can make the argument that if we were to adopt that position, there is no secrecy act any longer under the Grand Jury Act. But I found no authority for the proposition that Judge Toomin's order was a state law. Well, to the extent that state statutes, if they do not define terms, such as terms and matters occurring before the grand jury, then it self-effectuates and it's not uncommon for courts to conduct statutory construction. And that statutory construction does become a part of state law. And, for instance, in the area of federal preemption, there are plenty of Illinois state cases holding that for purposes of preemption, state law includes not just state statutes, it also includes judicial decisions construed in those state statutes. Yeah. Those are judicial decisions of reviewing courts. Those are not trial court decisions. I mean, that doesn't create a state law. But it only starts with the trial court. I mean, the only way to get to the appellate decision is to start with the trial court. And certainly as far as the city of Chicago was concerned, as a litigant bound by the orders of Judge Toomin. That's an entirely other issue. Yes. And at the time, at the time when the FOIA request was received and at the time when the city denied the request, the city undeniably was subject to the terms, the explicit terms of Judge Toomin's orders. That is not disputed by anybody in this litigation. And Judge Toomin's orders, as a matter of fact, the orders themselves are not under review. So no one ever appealed from those orders. They remained valid in full force and effect. That raises another question that's been kind of in the undercurrent. No one has appealed Judge Toomin's orders. That's accurate. So where in heaven's name would we get the authority to reverse it or vacate it? The question is not under review. The only order by Judge Toomin that is under review that could be reversed is an April 2016 order denying city's request to modify his previous two orders. So the previous two orders from 2012-2014, they're not under review. It is only his decision which is reviewed as an abuse of discretion. If we were doing a grander denial of a motion to vacate, don't we also look to the underlying order that's sought to be vacated? I'm not certain that language vacated. I do not believe we ever asked to vacate those orders. You asked to modify. We asked to modify to allow the city. But if we have jurisdiction to determine whether the court erred in not modifying, don't we have to look at the underlying order to make a determination as to whether the court erred? That would be one of the considerations. It would not be the only one because the times are different, and certainly the considerations for the injury of the protective order were at the very beginning of the grand jury investigation or when it was just completed in 2012-2014. They were somewhat different. They overlapped, but they were somewhat different than consideration in 2016. And so these are not the same. So we would ask this court respectfully to reverse Judge Miklos' order in the city to release materials under FOIA, and only in the alternative to reverse Judge Tumen's decision not to modify his protective orders. Thank you, Your Honor. Next topic. Thank you. First, I just want to, in response to Mr. Weaver's arguments about the grand jury versus the special prosecutor, there's just a couple of things I think from their side that are very important. Third one says the board also argues, the board was the one who was trying to get release of the records, also argues that the documents were not matters occurring before the grand jury because the documents were never disclosed to the grand jury. The record, however, shows that the trial court did not hear evidence on or decide this question. In fact, we cannot therefore decide if disclosure was justified on this basis. So Mr. Weaver made a number of statements about how it worked. That's not in the record. His statements here today aren't evidence. Those are the kind of things that Judge Miklos should have looked at on a far more specific basis, consistent with the way Verisari looked at it. And the case also says in shielding only matters occurring before the grand jury, Section 112B6 was designed to protect from disclosure only the essence of what takes place in the grand jury room in order to preserve the freedom and integrity of the deliberative process. And then we cite cases in our brief that show that there is a distinction between the prosecutor and the grand jury, and there's no obligation for everything that the prosecutor has collected to be presented to the grand jury. It only ever questions at this point about where does that line fall on any given document because Judge Miklos did not go document by document and did not really analyze it. The other point I want to make is this notion that we would be eviscerating the grand jury secrecy because it is an important point. Here are some of the exemptions in FOIA that already exist. Disclosure that would constitute a clearly unwarranted invasion of personal privacy. They would interfere with pending or actually and reasonably contemplated law enforcement proceedings. They would unavoidably disclose or identify the identity of a confidential source. They would endanger the life or physical safety of law enforcement personnel or any other person. Counsel, what you're saying then is forget about the Grand Jury Secrecy Act. They will have to establish that the documents that they're withholding fall under one of those specific exemptions, document by document. But the Grand Jury Secrecy Act is not a meaningless statute, and it's there for a reason. Let me address what precisely that reason is. All those things I just said about what's exempt under FOIA, a prosecutor has every right to produce the documents anyway. They don't have to assert any exemptions. What the Grand Jury Act does is take that discretion away, and it says because it's a grand jury, now you have to withhold those documents. So there is a very important meaningful distinction between those two things, and it's the only way to read those two statutes together. Because the Grand Jury Act very clearly says, if another law so directs, then it has to be released. And all of this is statutory. So the General Assembly is free to draw those lines however it wants to draw those lines. One can make the argument, as I said before, that when the FOIA status, when it says unless other law directs, that it would have to say specifically the Grand Jury Act directs. And that is one interpretation, but a couple points. So the special prosecutor points to similar language in a federal statute. Well, all that establishes is that if the General Assembly here wanted to use that kind of language, they could have looked at the federal model and done that. But they didn't. They used broad language. And then we saw a number of cases that say, like the cashier registry case, for example, that says even when the exemption is coming from another statute, they interpreted that that other statute, when it interacts with FOIA, in the manner of all FOIA exemptions, which is to narrowly construe the exemption. And you're correct that maybe there is a construction that would say when a law so directs means it specifically has to say Grand Jury. But there's also a very plausible way that says it doesn't. The language is to sort of open end it. And so the doctrine that says narrow construction in FOIA cases ought to apply in that instance. Thank you. Thank you. Counselors, thank you very much. The matter will be taken under advisement. And you will be in short recess before the next hearing.